| | |
|---|---|
| **Subject:** | Legal Correspondence - Cease & Desist |
| **Date:** | Friday, December 20, 2019 at 3:01:21 PM Central Standard Time |
| **From:** | Matthew Mitzner |
| **To:** | markr@blueruck.com |
| **CC:** | jpinkham@pandpllc.com, dwr@riw.com, rls@riw.com, lucie@jhmedia.com, jeffery.hudsonjr@gmail.com, Louis Rajsich |

**Attachments:** 191220 Trbine Cease and Desist Letter to Ruckman, Halagard.pdf

Mr. Ruckman,

Please see the attached correspondence.

It will be separately mailed via CMRRR.

Regards.



**Matthew M. Mitzner**
Attorney | Mitzner Kawalek LLP

214.810.1488 | matthew@mk-llp.com
Thanksgiving Tower
1601 Elm Street, Suite 1995
Dallas, Texas 75201
mk-llp.com

*This message is confidential and may be attorney-client privileged, if received in error, please do not read. Instead, please reply to me that you have received it in error and then delete the message. Thank you.*

EXHIBIT

17

**MITZNER KAWALEK LLP**

THANKSGIVING TOWER
1601 E<span>LM</span> S<span>TREET</span>, S<span>UITE</span> 1995
D<span>ALLAS</span>, T<span>EXAS</span> 75201
214.810.1488
mk-llp.com

MATTHEW M. MITZNER
matthew@mk-llp.com

December 20, 2019

**V<span>IA</span> E-M<span>AIL</span> & CMRRR** # 7019 1120 0001 6761 9777
Mark Ruckman
4500 Pacer Way
Flower Mound, TX 75028
markr@blueruck.com

Re:   *Demand to Cease & Desist; Notice of Potential Legal Claims.*

Dear Mr. Ruckman,

  This firm represents George O'Conor and Chime Media, LLC ("**Chime**") in this matter with you individually, as well as your company, Halagard, Inc. ("**Halagard**"). It has come to Chime's attention that you are actively contacting Chime investors, by use of Chime's confidential and proprietary information. Specifically, Chime is aware that you are fomenting dissent and collecting a group of investors with the use of false allegations concerning Chime and Mr. O'Conor, and that you have an active plan to submit a false, defamatory letter to Seth Grossman in Southborough, Massachusetts this coming Monday, December 23rd.

  You, Halagard, and your and its agents are hereby put on notice to immediately cease and desist from this conduct and plan. The content in the draft letter is false, misleading, and comprises an intentional disparagement of Chime and defames Mr. O'Conor. Further, my client demands that you instruct the group that you have gathered thus far—including Jeanne Housman, Brad Ross, Mike Avery, John Tyler, Richard Kosowsky, and J. Crandall—of this letter and its contents.

  Moreover, your past and planned conduct violates your Non-Disclosure Agreement ("**NDA**") with Chime, which is enclosed. Additionally, when you were hired to assist Chime and were introduced to Chime's trade secret, proprietary, and confidential information pursuant to your NDA, you took on a series of duties to Chime that you have violated and continue to violate. And your duties continued even after you were no longer assisting Chime in its business. *See* NDA.

Mr. Mark Ruckman  
December 20, 2019  
Page 2

Additionally, Mr. O'Conor is aware that you are operating a company in direct competition to Chime, which Mr. O'Conor understands is operating by misappropriating Chime's product, methods, and protected data. To date, we understand that you argue that your business is not in direct competition because it serves only mid- to low-cap market players. But as you know, nothing about Chime's business is specific to companies of a certain size or value.

To operate this competitive business, the circumstances strongly suggest that you are improperly using the confidential information disclosed to you pursuant to Chime's Non-Disclosure Agreement with you. *See Mabrey v. SandStream, Inc.*, 124 S.W.3d 302, 311–13 (Tex. App.—Fort Worth 2003, no pet.) (evidence that company had (a) designed system for which it had applied for a system and method patent, (b) required nondisclosure agreements from all hired persons, vendors, and potential investors, and (c) taken steps to prevent disclosure of the technology, was sufficient to establish that the technology was trade secret sufficient to enjoin a new company formed by the company's former agents who were using the same technology). Such conduct improperly misappropriates Chime's protected property.

Further, you are specifically targeting Chime investors in your scheme to attack Chime and take its investors. You would not be in a position to do that without improperly using information of Chime's that you agreed to not disclose. Assisting others in breaching these duties creates its own liability for you and those assisting in the conspiracy. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 513 (Tex. 1942).

To the extent that you believe that any of the above is inaccurate or misunderstood, please immediately clarify by providing any and all information addressing or supporting any such beliefs. Indeed, we demand that you provide us with a substantive response to this letter explaining your conduct in relation to the above issues and items **by no later than Friday, January 3, 2020 at 5:00 p.m. We <u>will</u> consider silence a response.**

Notwithstanding that response, and absent your presenting dependable evidence sufficient to negate the above, your conduct has made each of you jointly and severally liable for damages you have caused Chime. These damages are recoverable from you, including for Mr. O'Conor's noneconomic damages for the difficulty, anguish, and embarrassment that your conduct has imposed on him personally—to the extent the injuries to Chime and Mr. O'Conor are not irreparable. Chime and Mr. O'Conor are also entitled to seek potential punitive damages and

MITZNER KAWALEK LLP

Mr. Mark Ruckman
December 20, 2019
Page 3

recover their incurred attorney fees by your forcing the need to investigate and, if necessary, prosecute Chime's claims to judgment.

To be clear, Chime demands that you, Halagard, and your and its other participants immediately cease and desist from the following:

- continuing the improper conduct identified above;
- using any and all information of, or derived from, Chime's proprietary and confidential information;
- at all defaming Mr. O'Conor or Chime;
- soliciting investors of Chime; and
- attempting to tortiously interfere with Chime's existing contracts and prospective business interests.

Mr. O'Conor and Chime regret that it has become necessary to issue this notice and demand. But Chime must protect itself, its employees, and its customers, from what it has learned and understands to be straightforward, illegal conduct. This letter does not purport to address all of Mr. O'Conor's or Chime's claims and rights against you and Halagard; and Mr. O'Conor and Chime hereby reserve all of their rights and remedies available at law and equity.

Because litigation is anticipated, Mr. O'Conor and Chime hereby notify you of your legal obligation to **preserve all documents, communications, emails, text messages, and other messages in their native form** (*i.e.*, whether hard copy or electronic, and if electronic, also preserving the information's metadata)—whether currently held by you or any third party, or located upon a server, in the cloud, or on any devices, to include by way of example: phones, tablets, and computers, personal or otherwise—which were in any way created, modified, or exchanged from October 1, 2017 to the present and thereafter in connection with the following subjects: (a) the establishment of Halagard; (b) the operations, products, and sales of the same; (c) your communications with any former, current, or prospective investors in Chime; (d) statements published to third parties about Mr. O'Conor and/or Chime; and (e) all communications between you and the above-listed persons in any way related to Halagard, including plans to compete against Chime. Finally, please also preserve any information of Chime's in your possession, custody, or control.

To be as clear as possible, please know that your obligations require you to ensure that nothing is possibly lost or modified. *See, e.g., E.I. du Pont de Nemours and Co. v. Kolon Industs., Inc.*, 803 F.Supp.2d 469, 507 (E.D. Va. 2011) (explaining

Mr. Mark Ruckman<br>
December 20, 2019<br>
Page 4

that continuing to use a device or alter a storage location after receiving a preservation notice constitutes spoliation when it results in loss or alteration of data); *Nucor Corp. v. Bell*, 251 F.R.D. 191, 196 (D.S.C. 2008) (same).

Failing to preserve as identified above may constitute spoliation and thus subject you to legal penalties and sanctions, including presumptions that the disposed or allegedly "lost" evidence is the worst of what the factfinder could imagine and supports what Mr. O'Conor and Chime alleges it would show.

If any of you wish to settle this matter, **please make your proposal via email to me by Friday, January 3, 2020 at 5:00 pm**.

Again, if you believe any of the facts set forth above are in error, please notify me immediately. Otherwise, please have your counsel contact me if you wish to discuss the above matters further.

Sincerely,

Matthew M. Mitzner

MMM/lr

Cc:   Jenifer M. Pinkham, PHIFER PINKHAM, LLC, jpinkham@pandpllc.com
      David W. Robinson, Roger L. Smerage, RUBERTO, ISRAEL & WEINER, P.C., dwr@riw.com, rls@riw.com
      Lucie Salhany, apparent Chairwoman of HALAGARD, lucie@jhmedia.com
      Jeff Hudson, HALAGARD, Jeffery.hudsonjr@gmail.com

MITZNER KAWALEK LLP

## MUTUAL NON-DISCLOSURE AGREEMENT

This Agreement, made as of the 22 day of May, 2015 (the "Effective Date"), by and between Chime Media, LLC and George O'Conor (together "Chime") and Mark Renner ("Company"), sets forth the terms and conditions of the confidential disclosure of certain information between the parties. The party from time to time disclosing Confidential Information, as herein defined, shall be referred to as the "Discloser" with respect to such Confidential Information and the party from time to time receiving such Confidential Information shall be referred to as the "Recipient" with respect to such Confidential Information.

For good and valuable consideration, the receipt and sufficiency of which they each acknowledge, Chime and Company agree as follows:

"Confidential Information" shall mean all information disclosed to Recipient by Discloser or its agents or employees in any manner, whether orally, visually or in tangible form (including, without limitation, documents, devices and computer readable media) and all copies thereof, whether created by Discloser or Recipient. Tangible materials that disclose or embody Confidential Information shall be marked by Discloser as "Confidential," "Proprietary" or the substantial equivalent thereof.

Except as expressly permitted herein, Recipient shall not disclose Confidential Information and shall prevent the disclosure of such information by Recipient's employees, directors, officers, advisors, financing sources, agents and independent contractors (collectively, "Representatives").

Recipient shall use Confidential Information solely for the following purpose (the "Permitted Purpose"): evaluating, negotiating and consummating a business relationship between the parties.

Recipient shall disclose Confidential Information only to those of its Representatives who have a need to know such information for the Permitted Purpose. Recipient shall require the agreement of all Representatives who have access to Confidential Information to be bound by the terms of this confidentiality agreement limiting their use of such information to the Permitted Purpose and prohibiting them from disclosing such information to third parties.

Confidential Information shall not include any information that Recipient can demonstrate:

(a) was in Recipient's possession prior to disclosure by Discloser hereunder;
(b) was generally known, in the trade or business in which it is practiced by Discloser, at the time of disclosure to Recipient hereunder, or becomes so generally known after such disclosure, through no act of Recipient or its employees, agents or independent contractors;
(c) has come into the possession of Recipient from a third party who is not known by Recipient to be under any obligation to Discloser to maintain the confidentiality of such information;
(d) was developed by Recipient independently of and without reference to or use of Confidential Information or information that Discloser has disclosed in confidence to Recipient or its Representatives.

If a particular portion or aspect of Confidential Information becomes subject to any of the foregoing exceptions, all other portions or aspects of such information shall remain subject to all of the provisions of this Agreement.

Recipient agrees not to reproduce or copy by any means Confidential Information without Discloser's prior written permission in each case, except as reasonably required to accomplish such Recipient's Permitted Purpose. Upon written demand by Discloser at any time, Recipient shall return promptly to Discloser or destroy all tangible materials that disclose or embody Confidential Information.

Recipient shall not remove any proprietary rights legend from, and shall, upon Discloser's reasonable request, add any proprietary legend to, materials disclosing or embodying Confidential Information.

In the event that Recipient is ordered to disclose Discloser's Confidential Information pursuant to a judicial or governmental request, requirement or order, Recipient shall promptly notify Discloser and take reasonable steps to assist Discloser in contesting such request, requirement or order or otherwise protecting Discloser's rights.

Discloser understands that Recipient evaluates, develops or acquires technology which may be similar to that to be disclosed hereunder for its own products or services, and that existing or planned technology independently evaluated, developed or acquired by the Recipient may contain ideas and concepts similar or identical to those contained in Discloser's Confidential Information. Discloser agrees that entering into this Agreement shall not preclude Recipient from evaluating, developing or acquiring technology similar to Discloser's, without obligation to Discloser, provided Recipient does not breach its obligations to Discloser under this Agreement or use the Confidential Information to develop such technology.

Recipient acknowledges that Confidential Information may still be under development, or may be incomplete, and that such information may relate to products or services that are under development or are planned for development. DISCLOSER MAKES NO WARRANTIES REGARDING THE ACCURACY OF THIS CONFIDENTIAL INFORMATION. Discloser accepts no responsibility for any expenses, losses or action incurred or undertaken by Recipient as a result of Recipient's evaluation, receipt or use of Confidential Information.

Neither party has any obligation under or by virtue of this Agreement to purchase from or furnish to the other party any products or services, or to enter into any other agreement, including but not limited to, a development, purchasing or technology licensing agreement.

Other than as expressly specified herein, Discloser grants no license to Recipient under any copyrights, patents, trademarks, trade secrets or other proprietary rights to use or reproduce Confidential Information.

The parties acknowledge that it will be impossible to measure the damages that would be suffered by Discloser if Recipient fails to comply with this Agreement and that in the event of any such failure, Discloser will not have an adequate remedy at law. Discloser shall, therefore, be entitled in addition to any other rights and remedies to obtain specific performance of Recipient's obligations hereunder and to obtain immediate injunctive relief. Recipient shall not urge, as a defense to any proceeding for such specific performance or injunctive relief, that Discloser has an adequate remedy at law.

This Agreement and all actions related hereto shall be governed by the laws of the Commonwealth of Massachusetts, United States of America, excluding its choice of law principles. With respect to any action arising under or related to this Agreement, Recipient hereby: (i) agrees that Recipient has sufficient contacts with Massachusetts to subject it to the personal jurisdiction of the state and federal courts located in Boston, Massachusetts, United States of America; (ii) that venue properly lies in any or all of those courts; (iii) waives and agrees not to assert any claim that it is not subject personally to the jurisdiction of the above-named courts or that such action should be dismissed on grounds of lack of venue or *forum non conveniens*, should be transferred to any court other than the above-named courts, or should be stayed by reason of the pendency of some other proceeding in any court other than the above-named courts; (iv) consents and agrees that service of process may be made in any manner permitted by law or by registered or certified mail, return receipt requested, at its principal place of business, and that service made in accordance with the foregoing is reasonably calculated to give actual notice of any such action; and (v) waives and agrees not to assert any claim that service of process made in accordance with the foregoing does not constitute good and sufficient service of process.

The rights and obligations herein shall bind the parties, their legal representatives, successors, heirs and assigns.

This Agreement expresses the entire agreement and understanding of the parties with respect to the subject matter hereof and supersedes all prior oral or written agreements, commitments and understandings pertaining to the subject matter hereof. Any modifications of or changes to this Agreement shall be in writing and signed by both parties.

All rights and obligations hereunder shall expire in their entirety five years from the date hereof.

*Signature Page to*
*Non-Disclosure Agreement*

_____
CHIME Media, LLC

By:_____

Title:_____

Date:_____

*Mark Ruckman*
[COMPANY]

By: *MAR*

Title: *Owner*

Date: *5/22/15*