UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHIME MEDIA, LLC, *and* <br> GEORGE O'CONOR, <br><br> *Plaintiffs and Counter-Defendants,* <br><br> v. <br><br> MARK RUCKMAN, *and* HALAGARD, INC., <br><br> *Defendants and Counter-Plaintiff.* | §<br>§<br>§<br>§<br>§<br>§  CIVIL ACTION NO. 4:20-CV-00071-ALM<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S MOTION TO DISMISS RUCKMAN'S COUNTERCLAIMS**

Respectfully submitted,

Matthew M. Mitzner

By: _____
Texas Bar No. 24068911
matthew@mitznerllp.com
**MITZNER LLP**
Thanksgiving Tower
1601 Elm Street, Suite 1995
Dallas, Texas 75201
Tel: (214) 810-1488
Fax: (214) 614-7485

ATTORNEY FOR PLAINTIFFS AND
COUNTER-DEFENDANTS

## CERTIFICATE OF SERVICE

      I hereby certify that, today, I served a true and correct copy of this document on all counsel of record by this Court's ECF system.

_____<br>
Matthew M. Mitzner

TABLE OF CONTENTS

I. Introduction ........................................................................................................................ 1

II. Standard .............................................................................................................................. 1

III. Arguments and Authorities ................................................................................................ 2

    A. Ruckman's breach-of-purchase-contracts claim should be dismissed. ...................... 2

        1. The parties to the Agreements are not parties to this lawsuit. ....................... 3

        2. The Agreements do not at all address how the purchase funds for the Chime membership interests would be used. ................................................................ 4

    B. Ruckman's unjust-enrichment/money-had-and-received claim should be dismissed because of the Agreements. ................................................................................................ 5

    C. Ruckman's fraud claim against O'Conor should be dismissed. ................................ 6

    D. Ruckman's breach-of-oral-employment-contract claim should be dismissed. .......... 7

        1. This claim does not survive applicable limitations. ...................................... 8

        2. Ruckman fails to plead material terms of any such oral agreement. ............. 8

    E. Ruckman's unjust-enrichment (for services allegedly rendered) claim should also be dismissed. ............................................................................................................................ 10

        1. This claim fails to survive limitations. ........................................................ 11

        2. Ruckman has not pleaded facts sufficient to meet Twombly/Iqbal. ............ 11

IV. Prayer ................................................................................................................................ 12

## TABLE OF AUTHORITIES

**CASES**

*Amicas, Inc. v. GMG Health Sys., Ltd.*, 676 F.3d 227 (1st Cir. 2012) ........................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 2

*DeWitt Cty. Elec. Coop. v. Parks*, 1 S.W.3d 96 (Tex. 1999) ........................................................... 6

*DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243 (Colo. App. 2001) ............................ 10

*Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869 (Tex. 2007) ............................ 11

*Farone v. Bag'n Baggage, Ltd.*, 165 S.W.3d 795 (Tex. App.—Eastland 2005, no pet.) ............. 10

*Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000)) ................................................... 6

*Fuentes v. Zaragoza*, 555 S.W.3d 141 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ................ 3

*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011) ....................................................................... 3

*Harper v. Mancos Sch. Dist. RE-6*, 837 F.Supp.2d 1211 (D. Colo. 2011) ...................................... 9

*Hottinger Excavating & Ready Mix, LLC v. R.E. Crawford Constr., LLC*,
    175 F.Supp.3d 1269 (D. Colo. 2016) ........................................................................................ 8

*Jorgensen v. Colorado Rural Props., LLC*, 226 P.3d 1255 (Colo. App. 2010) .............................. 9

*Lucas v. Whittaker Corp.*, 335 F.Supp. 889 (D. Colo. 1971) .......................................................... 8

*Mapco, Inc. v. Carter*, 817 S.W.2d 686 (Tex. 1991) ....................................................................... 3

*Paquet v. Smith*, 854 F.Supp.2d 1003 (D. Colo. 2012) ................................................................... 6

*Peko Oil USA v. Evans*, 800 S.W.2d 572 (Tex. App.—Dallas 1990, writ denied) ....................... 11

*Quinn v. Workforce 2000, Inc.*, 887 F.Supp. 131 (E.D. Tex. 1995) ................................................ 3

*Richter v. Wagner Oil Co.*, 90 S.W.3d 890 (Tex. App.—San Antonio 2002, no pet.) ................. 11

*Stice v. Peterson*, 355 P.2d 948 (Colo. 1960) ............................................................................... 10

*Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825 (Colo. App. 1990)) ................................................ 8

*Universal MRI & Diagnostics, Inc. v. Medical Lien Mgmt.*,
    497 S.W.3d 653 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ........................................... 6

*Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942 (Tex. 1990) .................................... 11, 12

*W. Distrib. Co. v. Diodosio*, 841 P.2d 1053 (Colo. 1992)) ............................................................. 8

*Wheeler v. White*, 398 S.W.2d 93 (Tex. 1965) ............................................................................. 10

*Wohlfahrt v. Holloway*, 172 S.W.3d 630 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). 12

**STATUTES**

Colo. Rev. Stat. § 13-80-101 ................................................................................................. 8

**OTHER AUTHORITIES**

Mass. Gen. Laws ch. 156D, § 14.05 ..................................................................................... 3
Mass. Gen. Laws ch. 156B, § 102 ........................................................................................ 3

Plaintiffs and Counter-Defendants Chime[1] and O'Conor[2] move to dismiss Defendant and Counter-Plaintiff Ruckman's[3] Counterclaims (Dkt. 13) pursuant to Federal Rule of Civil Procedure 12(b)(6), and respectfully state as follows:

## I.  INTRODUCTION

Ruckman's Counterclaims should be dismissed under the terms of the very agreements upon which he sues, as well as well-established law. Ruckman asserts two basic complaints—that (1) O'Conor allegedly misused the money exchanged to purchase membership interests in Chime from O'Conor's company, Ledgewood; and (2) Ruckman says he had an oral agreement with "Chime and/or O'Conor" by which he was employed and would have been paid.

Each of these complaints can be easily dispatched, as the agreements that Ruckman attaches apply no conditions to how Ledgewood could use the money that it accepted in exchange for the Chime interests, and Ruckman's pleadings reveal the truth that he had no employment agreement with "Chime and/or O'Conor." Ruckman had a full-time job handling logistics for a separate employer and has never previously demanded payment for his help developing the pitch-decks for Chime in its nascent days—and he does not plead otherwise.

The Counterclaims as pleaded should be dismissed.

## II.  STANDARD

As this Court knows, Ruckman's Counterclaims must satisfy the *Twombly/Iqbal* standard. Under that standard, plaintiffs must state a claim for relief that is plausible on its face by setting forth factual allegations supporting each element of each claim. *Bell Atl. Corp. v. Twombly*, 550

---

[1]  "**Chime**" refers to Plaintiff and Counter-Defendant Chime Media, LLC.
[2]  "**O'Conor**" refers to Plaintiff and Counter-Defendant George O'Conor.
[3]  "**Ruckman**" refers to Defendant and Counter-Plaintiff Mark Ruckman.

U.S. 544, 555 (2007). To state a claim for relief plausible on its face, a plaintiff must provide factual allegations to plausibly support each element required to establish the existence of a cognizable claim:

> [T]he pleading standard [that] Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting *Twombly*, 550 U.S. at 555–57, 570).

So, a plaintiff's factual allegations must take the claim beyond "the mere possibility of misconduct," to the realm of plausibility. *See id.* at 679. Evaluating the allegations' plausibility "requires" the court to "draw on its judicial experience and common sense." *Id*. The Supreme Court warned that not requiring this protection would "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* (hereafter, the above is "**Twombly/Iqbal**").

### III. ARGUMENTS AND AUTHORITIES

#### A. Ruckman's breach-of-purchase-contracts claim should be dismissed.

The first breach-of-contract claim that Ruckman asserts concerns three purchase agreements for membership interests in Chime. (Dkt. 13 at 27, ¶ 53.) Those Agreements[4] set forth what was purchased. Ruckman pleads that it was through the Agreements that he acquired "at least a

---

[4] The "**Agreements**" are exhibits 1–3 to Ruckman's Counterclaims. *See* Dkt. 13-1–13-3.

.7% membership interest in Chime." (Dkt. 13 at 28, ¶ 54.) Ruckman is not saying that he (or New Direction IRA, Inc.) did not receive the membership interests in Chime that he (or New Direction IRA, Inc.) paid for.

### 1.   *The parties to the Agreements are not parties to this lawsuit.*

Ruckman alleges—on information and belief—that "O'Conor failed to perform under, and therefore breached, each of [the Agreements] by using some or all of the funds invested by Ruckman in Chime for O'Conor's personal account or expenses." (*Id.* at 28, ¶ 57.)

That is incorrect as a matter of law for multiple reasons.

*First*, for **O'Conor** to have breached the Agreements he would have had to have personally been party to them. He is not. (*See* Dkt. 13-1–13-3.) Moreover, there are no duties arising under the Agreements for O'Conor to fulfill. (*See id.*) Rather, Ledgewood Design LLC is the seller under the Agreements. (*See id.*) Ledgewood[5] is not a party to this litigation.[6]

*Second*, the "Buyer" under the first two Agreements is "New Direction IRA, Inc. FBO Mark Ruckman SEP IRA," not Ruckman himself. (*See* Exhs. 1–2.) New Direction IRA, Inc. is

---

[5]   "**Ledgewood**" refers to Ledgewood Design LLC, which is a non-party to this lawsuit. Notably, Ruckman seems to suggest that Ledgewood is not a party to its Counterclaims because it is allegedly dissolved. (*See* Dkt. 13 at 22, ¶ 17.) But, as a Massachusetts entity (*see* Exhibit 1, Ledgewood Massachusetts Secretary of State filing), it survives dissolution for litigation purposes. *See* Mass. Gen. Laws ch. 156B, § 102; Mass. Gen. Laws ch. 156D, § 14.05. The Court may take judicial notice of "matters of public record directly relevant to the issue at hand" when deciding this Rule 12(b)(6) motion to dismiss. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

[6]   Ruckman makes a single reference to Ledgewood having been the "alter ego of O'Conor." Dkt. 13 at 24, ¶ 29. But Ledgewood is not a party to this lawsuit, and it must be for the Court to be able to make such a finding. *See, e.g.*, *Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687–88 (Tex. 1991); *Fuentes v. Zaragoza*, 555 S.W.3d 141, 167 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("[W]hen a plaintiff alleges that two separate parties are to be treated as one under the law, [the] plaintiff is required to name and serve each party sought to be held liable."). Nor has Ruckman actually pleaded the elements of the theory and factual allegations to support the same. Therefore, the single reference has no effect. *E.g.*, *Quinn v. Workforce 2000, Inc.*, 887 F.Supp. 131, 135 (E.D. Tex. 1995) ("[T]he basis for disregarding the corporate fiction … is an independent ground of recovery that must be specifically pleaded or waived.").

also not a party to this litigation.[7] There are zero pleadings from Ruckman concerning how he personally obtained the interests in Chime from that incorporated entity.[8]

*Third,* while the "Buyer" in the third agreement is Ruckman personally, he pleaded breach of agreement by O'Conor personally, not by Ledgewood—the entity from which Ruckman purchased the membership interest in Chime in that instance (*see* Exh. 3)—which, again, is not a party to this lawsuit.

Accordingly, Ruckman's breach-of-contract claim regarding the Agreements should be dismissed as a matter of law.

### 2. *The Agreements do not at all address how the purchase funds for the Chime membership interests would be used.*

To breach a contract, the defendant must fail to perform a duty required thereunder. *E.g.*, *Amicas, Inc. v. GMG Health Sys., Ltd.*, 676 F.3d 227, 231 (1st Cir. 2012) (breach requires non-compliance with the terms of the contract).[9] Ruckman alleges, on information and belief, that O'Conor breached the Agreements by "fail[ing] to perform under, and therefore breached, each of [the Agreements] by using some or all of the funds invested by Ruckman in Chime for O'Conor's personal account or expenses." (*Id.* at 28, ¶ 57.) Ruckman does not go further to identify what provisions of the Agreements O'Conor could have breached.

And *that* is because, regardless of the fact that O'Conor was not a party to the Agreements, the Seller's only duties are to sell the membership interests in Chime to the Buyer. (*See* Exhs. 1–

---

[7]   Notably, the signatures for New Direction IRA, Inc. substantially differ from those added by Ruckman when he marks his having "read and approved" the document. *See* Dkt. 13-1 at 5; Dkt. 13-2 at 5 (listing Ian R. Weaver as the authorized signer for New Direction IRA, Inc. for this agreement); Dkt. 13-3 at 5.

[8]   *See* Exhibit 2, New Direction IRA, Inc., Report to the Colorado Secretary of State. *See Funk*, 631 F.3d at 783 (the Court may take judicial notice of "matters of public record directly relevant to the issue at hand" when deciding this Rule 12(b)(6) motion to dismiss).

[9]   While there may be no conflict between the laws of Texas and Massachusetts on breach-of-contract claims, the Agreements select Massachusetts law to apply to any dispute arising therefrom. *See* Exh. 1 § 4.6; Exh. 2 § 4.6; Exh. 3 § 4.6.

3 at § 1.1.) Nothing in the Agreements establishes any duty for O'Conor personally. Nothing in the Agreements establishes a duty for how Ledgewood was to use the purchase funds. (*See generally* Dkt. 13-1–13-3.)

Common sense—which the Court is required to use at this stage, *see Iqbal*, 556 U.S. at 679—would further question how Chime was conceivably required to use purchase money, which was not paid to Chime, in a certain way. There are zero pleadings making any such connection between Ledgewood's money and Chime's operations. (*See generally* Dkt. 13.) The money paid was explicitly identified as purchase money; and it was provided in exchange for an membership interest in Chime. (*See* Dkt. 13-1–13-3.) Ruckman, however, frames the purchase as if it were some kind of dedicated loan. (Dkt. 13 at 28, ¶ 55.) But, by its very nature, purchase money does not operate like a dedicated loan—where the proceeds are dedicated to be used toward specific ends—regardless of how much Ruckman agitates that the money should have been used in a way he saw better fit. His complaint is of no moment legally.

For these reasons, Ruckman's breach-of-contract claim regarding the Agreements should be dismissed as a matter of law.

      **B.    Ruckman's unjust-enrichment/money-had-and-received claim should be dismissed because of the Agreements.**

In the alternative to Ruckman's breach-of-Agreements claim, Ruckman pleads an unjust-enrichment or money-had-and-received claim. (Dkt. 13 at 30, ¶¶ 69–71.) He claims that the purchase money paid to acquire a membership interest in Chime "represents a benefit and unjust enrichment to O'Conor and/or Chime." (*Id.* at ¶ 69.)[10]

---

[10]    Again, Ruckman is not alleging that the membership interests in Chime that were purchased were not received.

This claim can be immediately dismissed because express contracts concern the purchase money in dispute for this claim. *See, e.g.*, *Universal MRI & Diagnostics, Inc. v. Medical Lien Mgmt.*, 497 S.W.3d 653, 663 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("As a general rule, there can be no recovery under a quasi-contract theory—such as money had and received—when a valid, express contract covers the subject matter of the parties' dispute." (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)).

### C. Ruckman's fraud claim against O'Conor should be dismissed.

Ruckman's fraud claim is limited to O'Conor. (Dkt. 13 at 31.) Ruckman says the Agreements included representations that "the funds paid by Mark Ruckman to Ledgewood for his membership interests in Chime would be used for Mr. Ruckman's own account and for investment purposes in Chime as a company, not for the personal account or expenses of O'Conor or any other person or entity." (*Id.* at 31, ¶ 77.)

Ruckman provides no citation to any provision of the Agreements that involves any discussion of how the purchase money would be used after it was exchanged because the Agreements say nothing about the money—beyond that it was being paid to Ledgewood, not Chime.

Ruckman expressly pleads that the duty as to how the funds would be handled arises from the Agreements themselves. (*See* Dkt. 13 at 31, ¶ 77.) Therefore, Ruckman has no tort claim to assert arising from the Agreements. *DeWitt Cty. Elec. Coop. v. Parks*, 1 S.W.3d 96, 105 (Tex. 1999) (where defendant's conduct gives rise to liability only because it breaches the parties' agreement, the plaintiff will have only a breach-of-contract claim).[11]

An additional consequence of Ruckman pleading that the duty arose from the Agreements

---

[11] The same is true under Colorado law. *E.g.*, *Paquet v. Smith*, 854 F.Supp.2d 1003, 1011 (D. Colo. 2012) ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.").

is that Ruckman cannot sue O'Conor personally for allegedly failing to act in conformity with the Agreements' terms because he was not a party to the Agreements. O'Conor was not personally selling the Chime membership interests—Ledgewood was. (*See* Dkt. 13-1–13-3.) The Agreements therefore control.

Moreover, the Agreements each make fully clear that they are the sole and exclusive documents controlling "the entire understanding and agreement between the parties hereto concerning the subject matter hereof," and they reject that there were any representations extrinsic to the Agreements that were not merged into the Agreements. (Dkt. 13-1–13-3, § 4.3.) Therefore, Ruckman cannot sue for any alleged representations that are extrinsic to the Agreements.

Additionally, Ruckman does not provide any explanation of how he has been damaged by this alleged misrepresentation beyond boilerplate pleadings. (*See* Dkt. 13 at 32, ¶ 82.) In fact, his own pleadings contradict the notion that he could have been damaged, as Ruckman asserts that he acquired a .7% aggregate percentage interest in Chime, which he says he acquired via the Agreements. (*Id.* at 24, ¶ 24.) Thus, by his own pleadings, Ruckman (or New Direction IRA, Inc.) received what he alleges he (or New Direction IRA, Inc.) paid for.

Ruckman's fraud claim should therefore also be dismissed.

**D.      Ruckman's breach-of-oral-employment-contract claim should be dismissed.**

Ruckman alleges that Ruckman and "O'Conor **and/or** Chime" entered into "an oral employment contract. (Dkt. 13 at 29, ¶ 61 (emphasis added).) He also claims that he "asked O'Conor for a written employment agreement setting forth, among other things, Mr. Ruckman's salary or compensation." (Dkt. 13 at 26, ¶ 40.) Ruckman pleads that he was "told by O'Conor that such a written employment agreement was not necessary and that Mr. Ruckman would be paid for his

time spent working on Chime-related duties…" (*Id.* at ¶ 41.)[12]

### 1. *This claim does not survive applicable limitations.*

Actions on oral contracts for an unliquidated amount must be brought within three years to survive the applicable statute of limitations. Colo. Rev. Stat. § 13-80-101. Ruckman's allegations are entirely insufficient, as he generically says he was a Chime employee in "2015" (Dkt. 13 at 25, ¶ 35), but Ruckman does not provide a day, week, or even the month in that year when that employment allegedly began. Moreover, he does not specify when this agreement allegedly formed—which is essential because if, for example, it allegedly formed in 2015, then the claim is precluded due to applicable limitations.

Accordingly, this claim should be dismissed.

### 2. *Ruckman fails to plead material terms of any such oral agreement.*

To establish breach of contract under Colorado law,[13] a plaintiff must establish the existence of a binding agreement, including the elements of formation.[14] "An enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *Harper v. Mancos Sch. Dist. RE-6*, 837 F.Supp.2d 1211, 1218 (D.

---

[12] To be clear, O'Conor and Chime deny that Ruckman was ever gainfully employed by Chime (or O'Conor), as Ruckman was never even sent a W-2 or 1099—he had a full-time job elsewhere during the entire period referenced.

[13] Ruckman does not provide any pleadings about where Ruckman and O'Conor supposedly were when this oral agreement was allegedly entered, but for the period that Chime was operating before Ruckman began Halagard, Chime was operating out of Colorado, and Ruckman's personal address was confirmed to be in Colorado as well in third version of the Agreements. *See* Dkt. 13-3 at preamble and § 3.9. "By Colorado case law, the place where a contract is made governs its validity." *Lucas v. Whittaker Corp.*, 335 F.Supp. 889, 890 (D. Colo. 1971).

[14] *See Hottinger Excavating & Ready Mix, LLC v. R.E. Crawford Constr., LLC*, 175 F.Supp.3d 1269, 1277 (D. Colo. 2016) (the elements for a breach-of-contract claim are (1) the existence of a binding agreement, (2) the plaintiff's performance of its obligations, or some justification for its nonperformance, (3) the defendant's failure to perform its obligations, and (4) resulting damages (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)); *see also Id.* at 1278 (to "prevail on a claim for breach of an oral contract, plaintiff must prove all the elements of the formation and breach of that contract") (citing *Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825, 827 (Colo. App. 1990)).

Colo. 2011). "An offer is a manifestation by one party of a willingness to enter a bargain"; "the terms of the offer must be sufficiently definite that the promises and performances of each party are reasonably certain." *Id.* "An acceptance is a manifestation of assent to the terms of the offer and, unless otherwise specified in the offer, the offeree may accept by promising to perform or by performing." *Id.*

Ruckman does not plead that Chime (or O'Conor personally) offered to pay Ruckman any particular amount. Instead, Ruckman generically states that "O'Conor was **made aware** that Mark Ruckman's billing rate was $250.00 per hour." (Dkt. 13 at 26, ¶ 38 (emphasis added).) Even assuming the truth of this pleading, there are no pleadings connecting this alleged hourly rate to the work Ruckman alleges he performed for Chime as an employee, nor does he plead that "Chime and/or O'Conor" ever agreed to pay Ruckman any specific amount, nor that any method of payment was even discussed. Moreover, the pleadings do not allege that Ruckman ever demanded payment in real time or even after he left Chime. And further negating the factual plausibility that there was ever any employment agreement, Ruckman pleads that he was never paid anything for his alleged performance. (Dkt. 13 at 27, ¶ 46.) There are thus no prior dealings or payments to even reference from which the essential terms of any such oral agreement could be conceivably supplied.

"[I]f the parties omit entirely an essential term, resulting in an alleged contract that is so uncertain the court cannot determine whether or not it has been breached, there is no contract." *Jorgensen v. Colorado Rural Props., LLC*, 226 P.3d 1255, 1260 (Colo. App. 2010). Omitting a payment term as to how much will be owed is an essential term of a contract and, here, is not a term that could be supplied by law, presumption, or custom. *See id.* Ruckman has not pleaded an alleged breach-of-oral-contract claim that is factually plausible. *See, e.g.*, *DiFrancesco v. Particle*

*Interconnect Corp.*, 39 P.3d 1243, (Colo. App. 2001) (concluding as a matter of law that the parties failed to reach an agreement on all material issues because the parties' discussion omitted any agreement that specified how the royalty rate was to be calculated).

But the payment calculation and alleged amount owed are not the only missing, necessary allegations, for example: When would the obligation to pay arise; and when and how was it to be paid? *See Stice v. Peterson*, 355 P.2d 948, 952 (Colo. 1960) ("Here the alleged oral contract leaves all terms and conditions in doubt. For example: When does the obligation arise; when and how is it to be paid; what are the terms of payment? Such incomplete and ambiguous contracts have been condemned by this court.").[15]

Additionally, when did the agreement form? When did this alleged conversation with O'Conor happen? Ruckman generically says he was a Chime employee in "2015" (Dkt. 13 at 25, ¶ 35), but Ruckman does not provide a day, week, or even the month in that year when that employment allegedly began. Further, Ruckman does not detail when the alleged conversation with O'Conor happened in reference to the work Ruckman alleged he performed as an employee.

These pleadings are simply insufficient to set forth a factually plausible claim for breach of an oral agreement—it should accordingly be dismissed.

### E. Ruckman's unjust-enrichment (for services allegedly rendered) claim should also be dismissed.

In the alternative to Ruckman's breach-of-oral-agreement claim, Ruckman pleads an unjust-enrichment claim for alleged services rendered to "O'Conor and/or Chime." (Dkt. 13 at 31, ¶¶ 73–75.) Ruckman generically pleads that the benefit that Ruckman provided, for which he seeks

---

[15] Texas law on these grounds does not differ. *E.g.*, *Wheeler v. White*, 398 S.W.2d 93, 95 (Tex. 1965) (loan agreement was unenforceable because it did not specify amount of interest, method to compute interest, or time to pay interest); *Farone v. Bag'n Baggage, Ltd.*, 165 S.W.3d 795, 802 (Tex. App.—Eastland 2005, no pet.) (oral agreement was unenforceable because it did not specify essential terms, such as price and method of payment).

relief by this claim, was his "relocation" to the Dallas area. (*Id.*)

1. *This claim fails to survive limitations.*

This claim can be immediately dismissed because it does not survive the two-year statute of limitations on unjust-enrichment claims. *See Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) ("Unjust enrichment claims are governed by the two-year statute of limitations in section 16.003 of the Civil Practice and Remedies Code."). Ruckman alleges his move was in March 2017. (*See* Dkt. 13 at 27, ¶ 50.)

2. *Ruckman has not pleaded facts sufficient to meet* **Twombly/Iqbal.**

To recover for unjust enrichment, a claimant must prove: (1) that valuable services were rendered or materials furnished; (2) for the person sought to be charged (i.e., the defendant); (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by that person; and (4) under such circumstances as reasonably notified the defendant that the plaintiff, in performing such services, was expecting to be paid by the defendant. *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944–45 (Tex. 1990).

*First*, Ruckman never explains how his move to Dallas benefitted "O'Conor and/or Chime," nor are there any pleadings about why that move was allegedly requested, nor what came of the move that was of a benefit to "O'Conor and/or Chime."

*Second*, even giving Ruckman's pleadings every benefit of the doubt, the notion that his move would help "O'Conor and/or Chime" is only if it was for a further business advantage or opportunity. But that sort of "benefit" is expressly rejected as a basis to form this claim. *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 895 (Tex. App.—San Antonio 2002, no pet.) ("An expectation of a future business advantage or opportunity cannot form the basis of a quantum meruit claim."); *Peko Oil USA v. Evans*, 800 S.W.2d 572, 576 (Tex. App.—Dallas 1990, writ denied).

*Third*, Ruckman provides no pleadings that "O'Conor and/or Chime" *accepted* Ruckman's

move, nor that "O'Conor and/or Chime" used or enjoyed Ruckman's move. That is a required element. *Vortt Expl.*, 787 S.W.2d at 944.

*Fourth*, Ruckman does not provide any factual explanation or pleadings that "O'Conor and/or Chime" had reasonable notice that Ruckman would expect compensation for his move to Dallas—indeed, Ruckman does not even identify what amount of compensation "O'Conor and/or Chime" was given notice that Ruckman expected. *Cf. Vortt Expl.*, 787 S.W.2d at 944–45 (Tex. 1990). Ruckman also does not even allege having ever sent "O'Conor and/or Chime" a bill for the same. *See Wohlfahrt v. Holloway*, 172 S.W.3d 630, 636–37 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (defendant did not have reasonable notice that plaintiff expected payment because plaintiff did not submit a bill for nine years of service until suit was filed).

Because of these insufficient pleadings and the claim's inability to survive limitations, this claim should be dismissed.

## IV.  PRAYER

Therefore, Counter-Defendants Chime and O'Conor respectfully request this Court to Dismiss Ruckman's Counterclaims. Counter-Defendants further pray the Court grant them all general relief to which they have shown themselves entitled in the interests of justice.