UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CHIME MEDIA, LLC, *and* | § | |
| GEORGE O'CONOR, | § | |
| | § | |
| *Plaintiffs and Counter-Defendants,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-00071-ALM |
| | § | |
| MARK RUCKMAN, *and* HALAGARD, INC.,* | § | |
| | § | |
| *Defendants and Counter-Plaintiff.* | § | |

---

## PLAINTIFFS' MOTION TO DISMISS RUCKMAN'S AMENDED COUNTERCLAIMS

---

Respectfully submitted,

Matthew M. Mitzner

By: _____
Texas Bar No. 24068911
matthew@mitznerllp.com
**MITZNER LLP**
Thanksgiving Tower
1601 Elm Street, Suite 1995
Dallas, Texas 75201
Tel: (214) 810-1488
Fax: (214) 614-7485

ATTORNEY FOR PLAINTIFFS AND
COUNTER-DEFENDANTS

### CERTIFICATE OF SERVICE

I hereby certify that, today, I served a true and correct copy of this document on all counsel of record by this Court's ECF system.

_____
Matthew M. Mitzner

TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     STANDARD .................................................................................................... 1

III.    ARGUMENTS AND AUTHORITIES......................................................... 3

        A.      Ruckman has no capacity to sue on behalf of New Direction IRA, Inc. ............... 3

        B.      Ruckman's securities-fraud claim should be dismissed. ........................................ 4

                1.      Ruckman fails to plead this claim to meet Rule 9(b)'s
                        requirements..................................................................................... 4

                2.      The materials before the Court profoundly negate the
                        claim's plausibility........................................................................... 5

        C.      Ruckman's fraud claim should be dismissed........................................................... 9

        D.      Ruckman's breach-of-fiduciary-duty claim should be dismissed........................ 10

        E.      Ruckman's unjust enrichment (money had and received) claim
                should be dismissed. ............................................................................................... 10

        F.      Ruckman's breach-of-employment agreement should be dismissed.................... 11

                1.      Ruckman fails to plead facts that the alleged condition precedent
                        ever came into existence. .................................................................. 11

                2.      This claim does not survive applicable limitations.................................... 11

        G.      Ruckman's unjust enrichment (for services allegedly rendered)
                claim should be dismissed. .................................................................................... 12

                1.      This claim fails to survive limitations...................................................... 12

                2.      Ruckman has not pleaded facts sufficient to meet *Twombly/Iqbal*.......... 12

IV.     PRAYER......................................................................................................... 14

TABLE OF AUTHORITIES

## CASES

*8804 Bearcreek Family Trust v. Bank of Am., N.A.*,
   No. 4:11-cv-839, 2012 WL 1289716 (E.D. Tex. Apr. 16, 2012) ............................................ 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................................... 2

*DeWitt Cty. Elec. Coop. v. Parks*,
   1 S.W.3d 96 (Tex. 1999) ............................................................................................................. 9

*Elledge v. Friberg-Cooper Water Supply Corp.*,
   240 S.W.3d 869 (Tex. 2007) ................................................................................................... 12

*Formcrete, Co., Inc. v. NuRock Const., LLC*,
   No. 4:07cv290, 2007 WL 2746812 (E.D. Tex. Sept. 19, 2007) ............................................ 4

*Fortune Prod. Co. v. Conoco, Inc.*,
   52 S.W.3d 671 (Tex. 2000)) .................................................................................................... 10

*Fuentes v. Zaragoza*,
   555 S.W.3d 141 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ........................................ 6

*Funk v. Stryker Corp.*,
   631 F.3d 777 (5th Cir. 2011) .................................................................................................... 6

*Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992) ......................................................... 8

*Lucas v. Whittaker Corp.*,
   335 F.Supp. 889 (D. Colo. 1971) ........................................................................................... 12

*Mapco, Inc. v. Carter*,
   817 S.W.2d 686 (Tex. 1991) ..................................................................................................... 6

*Nauslar v. Coors Brewing Co.*,
   170 S.W.3d 242 (Tex. App.—Dallas 2005, no pet.) .............................................................. 3

*Paquet v. Smith*,
   854 F.Supp.2d 1003 (D. Colo. 2012) ..................................................................................... 9

*Peko Oil USA v. Evans*,
   800 S.W.2d 572 (Tex. App.—Dallas 1990, writ denied) .................................................... 13

*Quinn v. Workforce 2000, Inc.*,
887 F.Supp. 131 (E.D. Tex. 1995) ............................................................. 6

*Richter v. Wagner Oil Co.*,
90 S.W.3d 890 (Tex. App.—San Antonio 2002, no pet.) ........................... 13

*Spearwood Trust v. JPMorgan Chase Bank, NA*,
No. 12-CV-1074, 2013 WL 12393978 (W.D. Tex. Feb. 27, 2013) ........................... 4

*State of Texas v. Ysleta del Sur Pueblo*,
79 F.Supp.2d 708 (W.D. Tex. 1999) ........................................................... 4

*Tuchman v. DSC Comms. Corp.*,
14 F.3d 1061 (5th Cir. 1994) ................................................................. 5

*Universal MRI & Diagnostics, Inc. v. Medical Lien Mgmt.*,
497 S.W.3d 653 (Tex. App.—Houston [14th Dist.] 2016, no pet.)...................... 10

*Vortt Expl. Co. v. Chevron U.S.A., Inc.*,
787 S.W.2d 942 (Tex. 1990) ................................................................. 13

*Williams v. Bell Helicopter Textron, Inc.*,
417 F.3d 450 (5th Cir. 2005) ................................................................. 5

*Wohlfahrt v. Holloway*, 172 S.W.3d 630
(Tex. App.—Houston [14th Dist.] 2005, pet. denied) .................................... 14

## STATUTES

Colo. Rev. Stat. § 13-80-101 ................................................................. 12

## OTHER AUTHORITIES

5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1360 (3d ed. 2012) ............... 4

Mass. Gen. Laws ch. 156D, § 14.05 ........................................................... 6

Mass. Gen. Laws ch. 156B, § 102 ............................................................. 6

## RULES

Fed. R. Civ. P. 9(b) ................................................................. 5, 8

Plaintiffs and Counter-Defendants Chime[1] and O'Conor[2] move to dismiss Defendant and Counter-Plaintiff Ruckman's[3] Amended Counterclaims (Dkt. 33) pursuant to Federal Rule of Civil Procedure 12(b)(6), and respectfully state as follows:

## I.      INTRODUCTION

In response to Chime and O'Conor's first motion to dismiss (Dkt. 28), Ruckman selected to amend his claims. Ruckman's amended counterclaims should be dismissed under the terms of the very agreements upon which he previously sued, as well as well-established law. Ruckman asserts two basic complaints—that (1) O'Conor allegedly misrepresented that the money exchanged to purchase membership interests in Chime from O'Conor's company, Ledgewood,[4] would be used only for Chrime's operations; and (2) Ruckman says he had an oral agreement with Chime by which he was employed and should have been paid.

These complaints fail to establish plausible claims according to Ruckman's own pleadings. There's no factually plausible pleadings that Chime failed to apply Ruckman's funds as allegedly represented, and Ruckman's pleadings reveal the truth that he had no employment agreement with Chime. Ruckman had a full-time job handling logistics for a separate employer and has never previously demanded payment for his help developing the pitch-decks for startup Chime in its nascent days—and he does not plead otherwise.

The Amended Counterclaims, as pleaded, should be dismissed.

## II.      STANDARD

As this Court knows, Ruckman's Amended Counterclaims must satisfy the *Twombly/Iqbal*

---

[1]      "**Chime**" refers to Plaintiff and Counter-Defendant Chime Media, LLC.

[2]      "**O'Conor**" refers to Plaintiff and Counter-Defendant George O'Conor.

[3]      "**Ruckman**" refers to Defendant and Counter-Plaintiff Mark Ruckman.

[4]      "**Ledgewood**" refers to nonparty Ledgewood Design LLC.

standard. Under that standard, plaintiffs must state a claim for relief that is plausible on its face by setting forth factual allegations supporting each element of each claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To state a claim for relief plausible on its face, a plaintiff must provide factual allegations to plausibly support each element required to establish the existence of a cognizable claim:

> [T]he pleading standard [that] Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting *Twombly*, 550 U.S. at 555–57, 570).

So, a plaintiff's factual allegations must take the claim beyond "the mere possibility of misconduct," to the realm of plausibility. *See id.* at 679. Evaluating the allegations' plausibility "requires" the court to "draw on its judicial experience and common sense." *Id.* The Supreme Court warned that not requiring this protection would "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* (hereafter, the above is "***Twombly / Iqbal***").

### III.   ARGUMENTS AND AUTHORITIES

**A.   Ruckman has no capacity to sue on behalf of New Direction IRA, Inc.**

Ruckman's first three counterclaims arise out of the Agreements.[5] But to the first two of those Agreements, the NDIRA Agreements,[6] Ruckman was not even a party. The buyer under those Agreements is undisputedly New Direction IRA, Inc., a nonparty to this lawsuit. Ruckman's counterclaims arising out of or in connection with the NDIRA Agreements should be dismissed.

Ruckman claims that "New Direction IRA entered into the first and second Purchase Agreements, Exhibits 1 and 2, for the exclusive benefit of Ruckman and using Ruckman's funds," as the basis for why he, rather than New Direction IRA, Inc., is suing in connection with the NDIRA Agreements. Dkt. 33, ¶ 57. But that is insufficient to ground any capacity for Ruckman to sue for rights possessed by New Direction IRA, Inc.

"A plaintiff must have both standing and capacity to bring a lawsuit." *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 255 (Tex. App.—Dallas 2005, no pet.).[7] "A party has capacity to sue when it has legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Id.* "Capacity is a party's legal authority to go into court to prosecute or defend a suit." *Id.* But Ruckman does not plead authority to sue on behalf of New Direction IRA, Inc., nor does he plead that New Direction IRA, Inc. assigned to him rights arising under or in connection with the NDIRA Agreements (upon which he sues), nor does he plead that he gained legal title in some

---

[5]    The "**Agreements**" are exhibits 1–3 to Ruckman's Original Counterclaims. *See* Dkt. 13-1–13-3. They are referenced in Ruckman's Amended Counterclaims as if they remain exhibits (Dkt. 33, ¶ 57), but were inadvertently not filed with the amended pleading. For convenience, they are <u>Exhibits 3–5</u> hereto. In deciding this Rule 12(b)(6) motion to dismiss, the Court may consider the attached Agreements, which are cited by Ruckman in his allegations and which are central to his claims.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

[6]    The "**NDIRA Agreements**" are exhibits 1–2 to Ruckman's Original Counterclaims. *See* Dkt. 13-1–13-2.

[7]    For an individual who is not acting in a representative capacity, capacity is determined by the law of the person's domicile. Fed. R. Civ. P. 17(b)(1).

way from that incorporated entity.[8] Rather, the Agreements state that "[n]othing expressed or im-plied in this Agreement is intended or shall be construed so as to grant or confer on any person, firm or corporation other than the parties hereto, any rights or privileges hereunder." Dkt. 13-1 § 4.3, 13-2 § 4.3. Ruckman was not a party to the NDIRA Agreements. Dkt. 13 -1–13-2.

Dismissal is appropriate where the party lacks capacity to sue. *See, e.g.*, *8804 Bearcreek Family Trust v. Bank of Am., N.A.*, No. 4:11-cv-839, 2012 WL 1289716, at *1 (E.D. Tex. Apr. 16, 2012) (granting 12(b)(6) motion to dismiss because plaintiff trust lacked capacity to sue); *see also Spearwood Trust v. JPMorgan Chase Bank, NA*, No. 12-CV-1074, 2013 WL 12393978, at *2 (W.D. Tex. Feb. 27, 2013) (citing *State of Texas v. Ysleta del Sur Pueblo*, 79 F.Supp.2d 708, 712 (W.D. Tex. 1999); *Formcrete, Co., Inc. v. NuRock Const., LLC*, No. 4:07cv290, 2007 WL 2746812, at *1 (E.D. Tex. Sept. 19, 2007); 5C *Charles Alan Wright & Arthur R. Miller*, FED. PRAC. & PROC. § 1360 (3d ed. 2012)).

Because Ruckman pleads no legal basis to sue for losses in connection with the NDIRA Agreements, the portions of Ruckman's first three claims suing upon rights arising by virtue of the NDIRA Agreements should be dismissed.

### B.     Ruckman's securities-fraud claim should be dismissed.

#### 1.     *Ruckman fails to plead this claim to meet Rule 9(b)'s requirements.*

Ruckman pleads a securities-fraud claim arising from the Colorado Securities Act. Dkt. 33 at 9. Because this claim alleges fraud, Ruckman must specify the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *See* Fed. R. Civ. P. 9(b); *Tuchman v. DSC Comms. Corp.*, 14 F.3d

---

[8]      *See* <u>Exhibit 2</u>, New Direction IRA, Inc., Report to the Colorado Secretary of State. *See Funk*, 631 F.3d at 783 (the Court may take judicial notice of "matters of public record directly relevant to the issue at hand" when deciding this Rule 12(b)(6) motion to dismiss).

1061, 1068 (5th Cir. 1994). In other words, Ruckman must plead the "who, what, when, where, and how" of the fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).

But Ruckman avoids discussing **when** the alleged misrepresentation was made—and that omission becomes even more material in light of the fact that he alleges this claim arises out of the entry into three different Agreements executed over a series of several months. Dkt. 33, ¶ 57. If, for example, the supposed misrepresentation happened after the first two agreements were entered, then the scope of alleged damages and discovery shifts considerably.

Additionally, Ruckman fails to plead **where** the representation was allegedly made. That omission is material to examining the claim's plausibility, as the claim, as pleaded, assumes Colorado law applies without pleading a basis for the same.

Accordingly, this claim should be dismissed.

2.      *The materials before the Court profoundly negate the claim's plausibility.*

Ruckman says O'Conor "made a false statement of material fact, or omitted to state a material fact, when he represented to Ruckman that the proceeds from Ruckman's purchase of the Chime membership interests would be used to fund Chime's operations and/or when he failed to inform Ruckman that O'Conor would use the proceeds for his own benefit and account." Dkt. 33, ¶ 60. Thus, Ruckman's securities-fraud claim is directly tied to the Agreements (Dkt. 33, ¶ 57), and it is in connection with those purchases that he claims damages for an alleged violation of the Colorado Securities Act. *See* Dkt. 33 at 9.

*First*, the Agreements themselves fully undermine any plausibility to these allegations. The Agreements set forth the entirety of the representations and agreements as to the purchase proceeds—they explicitly state that "there are no representations, warranties, covenants, understandings or agreements, oral or otherwise, in relation thereto between the parties other than those incorporated herein and to be delivered hereunder." Dkt. 13-1 – 13-3 § 4.3.  Further, the Agreements

"constitute the entire understanding and agreement between the parties hereto concerning the subject matter hereof." *See id.* The representations Ruckman claims were falsely made are not referenced anywhere in the Agreements.

In contrast, the Agreements explicitly address how the purchase money would be used. In exchange for Ledgewood[9] (who is not a party to this litigation[10]) selling the Buyer membership interests in Chime, Ledgewood would provide:

- "for an aggregate purchase price of $200,000.00 (the 'Purchase Price') membership interests representing an aggregate percentage interest of 0.4% in" Chime;

- "for an aggregate purchase price of $100,000.00 (the 'Purchase Price') membership interests representing an aggregate percentage interest of 0.2% in" Chime; and

- "for an aggregate purchase price of $50,000.00 (the 'Purchase Price') membership interests representing an aggregate percentage interest of 0.1% in" Chime.

Dkt. 13-1–13-3 (preamble). Ledgewood, not Chime, was the seller of these membership interests in Chime because Ruckman was purchasing *after* the initial investor group had purchased their interests—so O'Conor was using Ledgewood to keep from diluting Chime's original investor group. *See* Dkt. 13-1–13-3 (preamble) (each noting Ledgewood's aggregate membership interest

---

[9]    Ruckman seems to suggest that Ledgewood is not a party to its amended counterclaims because it is currently dissolved for inadvertently not re-upping its franchise taxes with the State. (*See* Dkt. 33, ¶ 18.) But in the meantime, as a Massachusetts entity (*see* Exhibit 1, Ledgewood Massachusetts Secretary of State filing), it survives dissolution for litigation purposes. *See* Mass. Gen. Laws ch. 156B, § 102; Mass. Gen. Laws ch. 156D, § 14.05. The Court may take judicial notice of "matters of public record directly relevant to the issue at hand" when deciding this Rule 12(b)(6) motion to dismiss. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

[10]    Ruckman makes a single reference to Ledgewood having been the "alter ego of O'Conor." Dkt. 33, ¶ 28. But Ledgewood is not a party to this lawsuit, and it must be for the Court to be able to make such a finding. *See, e.g.*, *Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687–88 (Tex. 1991); *Fuentes v. Zaragoza*, 555 S.W.3d 141, 167 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("[W]hen a plaintiff alleges that two separate parties are to be treated as one under the law, [the] plaintiff is required to name and serve each party sought to be held liable."). Nor has Ruckman actually pleaded the elements of the theory and factual allegations to support the same. Therefore, the single reference has no effect. *E.g.*, *Quinn v. Workforce 2000, Inc.*, 887 F.Supp. 131, 135 (E.D. Tex. 1995) ("[T]he basis for disregarding the corporate fiction … is an independent ground of recovery that must be specifically pleaded or waived.").

continually reducing with each sale: 29.008%, 28.308%, then 28.108%). As Chime was not a party to the Agreements, it never made any representations as to how the purchase money paid to Ledgewood would be used.

Common sense—which the Court is required to use at this stage, *see Iqbal*, 556 U.S. at 679—would further question the plausibility of this claim: If the purchase money were not for membership interests in Chime, what could Ruckman have been thinking that Ledgewood (and thus O'Conor) was getting in exchange for the purchase money? For example, when someone buys a share of IBM, they receive the share in exchange for their payment—IBM does not receive any money as a part of that transaction. The money paid was explicitly identified as purchase money; and it was provided in exchange for a membership interest in Chime. (*See* Dkt. 13-1–13-3.) The Agreements' structure undermines the notion that the funds could reasonably have been construed in an entirely different way than contractually presented.

Ruckman, however, frames the purchase as if it were some kind of dedicated loan—that the representation was that Ruckman's purchase funds would be used **only** to fund Chime's operations. (Dkt. 33, ¶ 57.) To start, by its very nature, purchase money does not operate like a dedicated loan—where the proceeds are dedicated to be used toward specific ends. But more importantly, what reasonable investor would twist the alleged representation into something it was not: a commitment to using **Ledgewood's** money **solely** for Chime's operations?

*Second*, the September 6, 2018 letter Ruckman heavily references for his "discovery" that O'Conor had misrepresented how the purchase money would be used does not say what Ruckman suggests it does, and further undermines the claim's plausibility. Ruckman has not pleaded that O'Conor said he would use **Ledgewood's** funds **only** for funding Chime's operations. That is extremely important. Ruckman has pleaded that O'Conor allegedly told him he would use the

funds Ruckman provided to fund Chime's operations. Dkt. 33, ¶ 35. There is nothing in the letter (Dkt. 1-4, <u>Exhibit 6</u>) that could establish that O'Conor did not do so, nor are there any other facts pleaded to make that conclusion factually plausible.[11] And that matters vastly for claims subject to Rule 9(b). *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992) ("This higher standard stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation.").

The letter does not state that Ruckman's purchase funds were not used to fund Ledgewood. It says that Chime's sole source of cash was from Ledgewood. Dkt. 1-4 at 2. The letter goes on to state that that $2.1 million of Ledgewood's money had been loaned to Chime. Bottom line, $2.1 million vastly outweighs the $350,000 Ruckman spent to purchase his membership interests.[12] Ruckman cannot conclude from it that his purchase money was not used exclusively for Chime's operations.

This factual dissimilarity has important implications for limitations.[13] As of now, nothing plausible has been pleaded from which Ruckman can explain how he discovered that O'Conor did not use **Ruckman's** purchase-money-to-Ledgewood exclusively to fund Chime's operations—the point in time from which limitations is generally determined. The letter solely establishes that sometimes O'Conor uses Ledgewood's sales receipts to fund his personal expenses since he is the sole person running the startup. Dkt. 1-4 at 2 ("a portion of the proceeds of [the] sales of my

---

[11]     *See* Dkt. 1-4, September 6, 2018 letter, at 2. Ruckman refers to the letter and that particular date as central throughout his allegations. *See generally* Dkt. 33 (referenced 12 times). As a result, in deciding this Rule 12(b)(6) motion to dismiss, in addition to the fact that the letter was filed with the Complaint, the Court may also consider the letter here because Ruckman referred to it in his allegations and it is central to his claims.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

[12]     Moreover, Ruckman does not allege that he saw this letter in September 2018, and the letter is not made out to him. Dkt. 1-4.

[13]     Applicable limitations on a securities-fraud claim under Colo. Rev. Stat. § 11-51-501 is "three years after the discovery of the facts giving rise to a cause of action … or after such discovery should have been made by the exercise of reasonable diligence…"

personal membership interests were to be used by me for my personal expenses and a portion were to be reinvest[ed] by me into Chime to help fund operations").

As a result, the materials directly referenced and centrally used in Ruckman's pleadings profoundly undermine any plausibility to this claim. It should be dismissed.

### C.    Ruckman's fraud claim should be dismissed.

Ruckman's fraud claim is based on the same story that he asserted for his securities-fraud claim, and this claim can be dismissed for the same reasons as the securities-fraud claim, which challenges are accordingly incorporated herein: (1) failure to meet Rule 9(b)'s requirements, and (2) the claim as pleaded is factually implausible. *See supra* III.B.1, III.B.2.

This claim is similarly premised upon the Agreements, as all of the allegations concern alleged misrepresentations that preceded the Agreements' execution, by which Ruckman alleges he was defrauded. Dkt. 33, ¶¶ 67–70. As a result, Ruckman has no tort claim to assert. *DeWitt Cty. Elec. Coop. v. Parks*, 1 S.W.3d 96, 105 (Tex. 1999) (where defendant's conduct gives rise to liability only because it breaches the parties' agreement, the plaintiff will have only a breach-of-contract claim).[14]

Additionally, beyond boilerplate pleadings, Ruckman does not provide any explanation of how he has personally been damaged by this alleged misrepresentation. *See* Dkt. 33, ¶ 70. In fact, his own pleadings contradict the notion that he could have been damaged, as Ruckman asserts that he did acquire a .7% aggregate percentage interest in Chime, which he says he acquired via the Agreements. *Id.* at ¶¶ 25, 57. Thus, by his own pleadings, Ruckman (or New Direction IRA, Inc.) received what he alleges he (or New Direction IRA, Inc.) paid for.

---

[14]    The same is true under Colorado law. *E.g.*, *Paquet v. Smith*, 854 F.Supp.2d 1003, 1011 (D. Colo. 2012) ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.").

Ruckman's fraud claim should therefore also be dismissed.

**D.    Ruckman's breach-of-fiduciary-duty claim should be dismissed.**

Ruckman alleges that O'Conor breached a fiduciary duty owed to him by diverting "funds intended to fund Chime's operations and has used them instead for his own personal benefit and account." Dkt. 33, ¶ 74. This claim suffers from the same problems as Ruckman's fraud claim, which challenges are accordingly incorporated herein: (1) failure to meet Rule 9(b)'s requirements, and (2) the claim as pleaded is factually implausible. *See supra* III.B.1, III.B.2. It, too, should be dismissed.

**E.    Ruckman's unjust enrichment (money had and received) claim should be dismissed.**

Ruckman pleads an unjust-enrichment claim based on a money-had-and-received theory related to the purchase money for the membership interests. Dkt. 33, ¶¶ 86–88. He claims that the purchase money paid to acquire the membership interests in Chime "represents a benefit and unjust enrichment to O'Conor and/or Chime." *Id.* at ¶ 86.[15]

This claim can be dismissed because express contracts concern the purchase money in dispute for this claim. *See, e.g.*, *Universal MRI & Diagnostics, Inc. v. Medical Lien Mgmt.*, 497 S.W.3d 653, 663 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("As a general rule, there can be no recovery under a quasi-contract theory—such as money had and received—when a valid, express contract covers the subject matter of the parties' dispute." (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)). While alternative theories of recovery may be permitted to be presented in pleadings, here the pleadings are factually directly at odds—does an

---

[15]    Again, Ruckman is not alleging that the membership interests in Chime that were purchased were not received.

express contract exist or not? Indeed, Ruckman says he received the membership interests pur-chased through the Agreements. *E.g.*, Dkt. 33, ¶ 25. How is this claim factually plausible?

Like the others that are premised upon this story, the claim should be dismissed.

### F.   Ruckman's breach-of-employment agreement should be dismissed.

#### 1.   *Ruckman fails to plead facts that the alleged condition precedent ever came into existence.*

After amending his claims, Ruckman now no longer pleads that he was employed by "O'Conor and/or Chime," and asserts only Chime was the alleged employer (Dkt. 33 at 11–12) when, "in approximately 2015, Ruckman and Chime consented to and entered into an oral em-ployment contract whereby Ruckman agreed to render his professional services at a rate of $250 per hour, with compensation **to be deferred temporarily until Chime and/or O'Conor could secure more financing or investment**." Dkt. 33, ¶ 77 (emphasis supplied).

By Ruckman's amendments, Ruckman expressly pleads that there was a condition prece-dent to any payment allegedly owed to him. It is an explicit condition precedent to entitlement to any payment. And Ruckman has provided zero pleadings that, in fact, Chime and/or O'Conor did secure more financing or investment by which it could pay Ruckman.[16] Because Ruckman has pleaded no facts whatsoever that the condition was fulfilled or came into existence, this claim fails as a matter of law under *Twombly / Iqbal*. It should be dismissed.

#### 2.   *This claim does not survive applicable limitations.*

Actions on oral contracts for an unliquidated amount must be brought within three years to

---

[16]    To be clear, O'Conor and Chime deny that Ruckman was ever gainfully employed by Chime (or O'Conor), as Ruckman was never even sent a W-2 or 1099—he had a full-time job elsewhere during the entire period referenced.

survive the applicable statute of limitations. Colo. Rev. Stat. § 13-80-101.[17]  Ruckman's allega-tions are entirely insufficient, as he says he was a Chime employee in "2015" (Dkt. 33, ¶¶ 37, 77), but Ruckman does not provide a day, week, or even the month in that year when that employment allegedly began—which is essential for factual plausibility, and because if it allegedly formed in 2015, then the claim is precluded due to applicable limitations. *See* Colo. Rev. Stat. § 13-80-101.

Accordingly, this claim should be dismissed.

### G.   Ruckman's unjust enrichment (for services allegedly rendered) claim should be dismissed.

In the alternative to Ruckman's breach-of-oral-agreement claim, Ruckman pleads an un-just-enrichment claim for alleged services rendered to "O'Conor and/or Chime." (Dkt. 33, ¶¶ 90–92.) Ruckman says he provided services to Chime—to include his "relocation to the Dallas area" and, after amending his counterclaims, "the roughly 3,000 hours of uncompensated professional services" for the benefit of "O'Conor and/or Chime"—that allegedly went uncompensated. Dkt. 33, ¶ 90.

#### 1.     *This claim fails to survive limitations.*

This claim can be immediately dismissed because it does not survive the two-year statute of limitations on unjust-enrichment claims. *See Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) ("Unjust enrichment claims are governed by the two-year statute of limitations in section 16.003 of the Civil Practice and Remedies Code."). Ruckman alleges his move was in March 2017. (*See* Dkt. 33, ¶ 51.) The claim should be dismissed.

#### 2.     *Ruckman has not pleaded facts sufficient to meet* **Twombly/Iqbal.**

To recover for unjust enrichment, a claimant must prove: (1) that valuable services were

---

[17]      "By Colorado case law, the place where a contract is made governs its validity." *Lucas v. Whittaker Corp.*, 335 F.Supp. 889, 890 (D. Colo. 1971).

rendered or materials furnished; (2) for the person sought to be charged (i.e., the defendant); (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by that person; and (4) under such circumstances as reasonably notified the defendant that the plaintiff, in performing such services, was expecting to be paid by the defendant. *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944–45 (Tex. 1990).

*First*, Ruckman never explains how his move to Dallas benefitted "O'Conor and/or Chime," nor are there any pleadings about why that move was allegedly requested, nor what came of the move that was of a benefit to "O'Conor and/or Chime."

*Second*, even giving Ruckman's pleadings more than the benefit of the doubt, the notion that his move would help "O'Conor and/or Chime" could be plausibly true only if it was for a further business advantage or opportunity. But that sort of "benefit" is expressly rejected as a basis to form this claim. *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 895 (Tex. App.—San Antonio 2002, no pet.) ("An expectation of a future business advantage or opportunity cannot form the basis of a quantum meruit claim."); *Peko Oil USA v. Evans*, 800 S.W.2d 572, 576 (Tex. App.—Dallas 1990, writ denied).

*Third*, Ruckman provides no pleadings that "O'Conor and/or Chime" **accepted** Ruckman's move, nor that "O'Conor and/or Chime" used or enjoyed Ruckman's move. That is a required element. *Vortt Expl.*, 787 S.W.2d at 944.

*Fourth*, Ruckman does not provide any factual explanation or pleadings that "O'Conor and/or Chime" had reasonable notice that Ruckman would expect compensation for his move to Dallas—indeed, Ruckman does not even identify what amount of compensation that "O'Conor and/or Chime" were given notice that Ruckman expected. *Cf. Vortt Expl.*, 787 S.W.2d at 944–45 (Tex. 1990). Ruckman also does not even allege having ever sent "O'Conor and/or Chime" a bill

for the same. *See Wohlfahrt v. Holloway*, 172 S.W.3d 630, 636–37 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (defendant did not have reasonable notice that plaintiff expected payment because plaintiff did not submit a bill for nine years of service until suit was filed).

Because these pleadings fail to set forth a factually plausible claim, and due to the claim's inability to survive limitations, it should be dismissed.

## IV.    PRAYER

Therefore, Counter-Defendants Chime and O'Conor respectfully request this Court to Dismiss Ruckman's Amended Counterclaims. Counter-Defendants further pray the Court grant them all general relief to which they have shown themselves entitled in the interests of justice.